IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AXTS INC., d/b/a Radian Weapons, an
Oregon corporation;

        Plaintiff,

     v.

GY6VIDS LLC, a Texas limited liability
Company,

        Defendant.

_____

Case No. 6:18-cv-00821-MC

OPINION AND ORDER

MCSHANE, Judge:

      Plaintiff AXTS Inc. (Radian) manufactures firearms and firearm accessories in Redmond, OR. They hired Defendant GY6vids LLC (GY6) to promote their products on a YouTube channel. Radian brings claims of fraud and unlawful trade practices against GY6 who, in turn asserts five counterclaims: (1) breach of contract (failure to pay); (2) breach of contract (confidentiality); (3) intentional interference with economic relations; (4) a civil action under the Computer Fraud and Abuse Act (18 U.S.C. § 1030(g)) (CFAA); and (5) attorney fees. Radian moves to dismiss counterclaims two through four.

      Because the facts alleged do not support a claim under the CFFA, Radian's motion is GRANTED as to the fourth counterclaim. That claim is DISMISSED with prejudice. Radian's motion is DENIED with respect to the remaining counterclaims.

1 – OPINION AND ORDER

# BACKGROUND[1]

GY6 is a video production company with a focus on firearms related content. Def.'s Answer, Affirmative Defenses, and Countercls. (Answer) at 51, ECF No. 15. In August of 2017, Josiah Underwood, Radian's Director of Operations, contacted Andrew Boetjer, GY6's CEO, to discuss the possibility of Radian sponsoring a GY6 video. *Id.* ¶¶ 52-53. Mr. Underwood proposed that GY6 create a promotional video featuring a Radian product to appear in front of a GY6 video. *Id.* ¶ 53.

GY6 and Radian then signed a contract stating that Radian would pay $0.03 per view for the first six months that Radian posted the video to YouTube. *Id.* ¶ 54. GY6 alleges that it agreed to the discounted price of $0.03 per view with the hope that it would lead to more business with Radian in the future. *Id.* The contract also contained a confidentiality clause that restricted the ability of the parties to discuss the terms of the contract with third parties. *Id.* ¶ 59.

GY6 created a 30-second video that promoted Radian and attached it to a video GY6 posted to YouTube on October 1, 2017. *Id.* ¶ 60. The video was viewed 527,208 times in its first month of release. *Id.* ¶ 65. GY6 sent Radian an invoice for $15,816.24 for the first month, which Radian paid. *Id.* GY6 then sent Radian an invoice for $42,442.29 for the second month's 1,414,743 views. *Id.* ¶¶ 66, 70. Radian did not pay the second invoice. *Id.* On December 14, 2017, an attorney representing Radian sent GY6 a letter asserting that the contract was void and unenforceable. *Id.* ¶ 71.

On February 5, 2018, GY6's counsel sent a demand letter seeking damages for Radian's failure to pay under the contract. *Id.* ¶ 74. Counsel for Radian maintained that the contract was "void and unenforceable." *Id.* GY6 then experienced a rapid uptick in "dislikes" of its YouTube

---

[1] At the motion to dismiss stage, I accept the allegations of the non-moving party, here GY6, as true.

videos. *Id.* ¶ 75. GY6's videos had received fewer than 50,000 aggregate dislikes in the six years that it had posted content to YouTube prior to its contract dispute with Radian. *Id.* On February 20, 2018, GY6's videos received nearly 19,000 dislikes. *Id.* One month later, GY6's videos received approximately 4,000 dislikes in a single day. *Id.* Specifically, GY6 alleges that Radian, "directly or indirectly, coordinated and executed a cyberattack on GY6vids' YouTube channel by causing an excessive number of dislikes to appear on GY6vids' videos, and by obscuring [Radian] as the source of those dislikes." *Id.* ¶ 77. In response to the influx of dislikes, GY6 removed the video, and others, from public availability. *Id.* ¶ 78.

On April 6, 2018, Radian filed the complaint in this matter and the marked increase in dislikes of GY6's content stopped. *Id.* ¶ 76. Radian alleges that GY6 breached its contractual obligations when it removed the video sponsored by Radian from public availability. *Id.* ¶ 78. GY6 alleges that Radian "orchestrated its cyberattack against GY6vids for the improper purposes of harming GY6vids and evading its debts." *Id.* ¶¶ 77-78. In addition to the claims discussed below, GY6 alleges that Radian breached the contract by refusing to pay $.03 per view for the second month's views, or any later views. Radian does not move to dismiss that claim.

## STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Radian moves to dismiss the following counterclaims: (2) breach of contract (confidentiality); (3) IIER; and (4) a civil claim under the CFAA. I address each in turn.

### 1. Second Counterclaim-Breach of Contract (Confidentiality)

GY6's second counterclaim alleges that Radian breached its contract with GY6 when it revealed confidential information to the public. Answer ¶¶ 59, 91-93, ECF No. 15. GY6 alleges:

> Further, because the Agreement included sensitive terms, including the discounted rate requested by [Radian], the Agreement included strict confidentiality provisions. In relevant part, the Agreement stated "Details and conditions in this contract are stated as a 'NO QUOTE DEAL,' none of which will be discussed to outside third parties at any point in time. If the need does arise to discuss these details to a third party, notification will be provided to each party of this contract. This contract is only to be discussed between the below signed representatives of [AXTS] and the CEO of GY6vids LLC."

Answer ¶ 59, ECF No. 15.

Although Radian reserves its right to challenge GY6's allegation that the contract was intended to be confidential, it does not move to dismiss on that ground. Instead, Radian merely argues that "GY6 alleges no facts to support its claim to more than $5 million in damages." Resp., 18, ECF No. 16. The harm, if any, will be determined at summary judgment or trial. At

this stage, it is enough that GY6 alleges the contract contained a strict confidentiality provision, that GY6 agreed to "the discounted rate requested by [Radian]" in the hope it would lead to more profitable business with Radian in the future, that Radian disclosed the agreement to the public, and that financial harm to GY6 followed the disclosure. The purpose of the confidentiality provision, after all, is to protect GY6 in its negotiations with other clients. To what extent any breach impacted such negotiations will be assessed during discovery.

Radian's motion to dismiss GY6's second counterclaim for breach of contract (confidentiality) is DENIED.

**2. Third Counterclaim-Intentional Interference with Economic Relations**

GY6 alleges that Radian committed the tort of Intentional Interference with Economic Relations when it employed improper means to institute a "cyberattack" on GY6's YouTube channel. GY6 claims that Radian's motive behind the attack was to avoid paying its debts to GY6 and to harm GY6. Answer ¶ 98, ECF No. 15. In order to make out a claim for tortious interference, GY6 must allege facts to support the following elements:

> (1) the existence of a professional or business relationship (which could include, *e.g.* a contract or a prospective economic advantage, (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship and (6) damages.

*McGanty v. Staudenraus*, 321 Or. 532, 535-36 (1995).

First, GY6 alleges the existence of business relationships, both current and prospective, with YouTube, its users, sponsors, and advertisers. Answer ¶ 97, ECF No. 15. At the motion to dismiss stage, I assume the truth of GY6's allegation that it had existing or prospective business relationships that were harmed by Radian's "cyberattack."

Second, while GY6 cuts close to the line of mere conclusory pleading, its allegation that Radian intentionally interfered with its business relationships is plausible. *Id.* ¶ 98. Radian knew that GY6 derived income from sponsorships. Mot. to Dismiss at 2, ECF No. 16. It is plausible to infer that Radian knew that inundating GY6's videos with dislikes would negatively impact the ranking metrics for GY6's YouTube channel and would subsequently harm GY6's relationships with its sponsors.

Third, Radian's status as a third party to GY6's relationships with YouTube, its users, and its sponsors, can be readily inferred from facts pled. Answer ¶ 99, ECF No. 15.

Fourth, GY6 alleges sufficient facts to support an intentional interference claim via an improper purpose theory. Under an improper purpose theory, GY6's allegation that Radian intended to cause it harm, while again skirting close to the line of conclusory allegation, satisfies the requirement that Radian's purpose was, "to inflict injury on the plaintiff 'as such.'" *Sharma v. Providence Health & Servs.-Oregon*, 289 Or. App. 644, 668 (2018) (quoting *Nw. Nat. Gas Co.*, 328 Or. at 498 ). Despite being facially conclusory, because the allegation that Radian wished to harm GY6 is plausible in light of other facts pled—e.g. the breakdown in the parties' contractual relationship—GY6's claim under an improper purpose theory is cognizable. *See* Answer at 1-2, ECF No. 15.[2] Additionally, one may plausibly infer that a purpose in bombarding an advertising-driven page with thousands of dislikes is to inflict financial harm on the promoter of the page. These allegations therefore differ from those merely alleging that an actor operates

---

[2] "AXTS Inc. (d/b/a "Radian Weapons") agreed to pay GY6vids LLC for a sponsorship on GY6vids' popular YouTube channel. AXTS specifically requested a sponsorship on a video with the potential for "high viewership." After GY6vids fully performed, and the video went viral, AXTS refused to pay. In a phone conversation after the video had amassed nearly 2 million views, AXTS's Director of Operations agreed that GY6vids had "upheld" its obligations but that AXTS "made a mistake" in entering the agreement because it could not afford to pay the amounts owed. Regrettably, AXTS has engaged in increasingly desperate tactics to avoid paying this unambiguous debt. . . ." Answer at 1-2, ECF No. 15.

6 – OPINION AND ORDER

in a way consistent with its own economic interest. *See Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 212 (1978) (*en banc*) (acts "wholly consistent with [defendant's] pursuit of its own business purposes as it saw them" do not satisfy improper purpose element)).

Fifth, GY6 alleges sufficient facts to support the existence of a causal link between Radian's interference and damage to GY6's existing and prospective economic relationships. GY6 argues that Radian's "cyberattack" on its YouTube channel negatively impacted its economic relationships with existing and prospective sponsors, YouTube, and consumers of its content. *Id.* ¶¶ 99-100. It is plausible to infer that Radian's coordinated campaign to dislike GY6's videos would negatively impact GY6's economic relationships and its ability to monetize content. Existing sponsors may discontinue monetary support out of a desire to not be associated with unpopular content. Likewise, potential sponsors may choose to go elsewhere with their marketing dollars.

Sixth, GY6 alleges $2,000,000 in damages as a result of Radian's intentional interference. *Id.* ¶ 101. This is an ambitious claim without specific information linking a loss in revenue to the alleged interference. However, at the motion to dismiss stage, the analysis is whether defendant is plausibly liable for the *misconduct* alleged. *Elizabeth Retail Properties LLC v. KeyBank Nat. Ass'n*, 83 F. Supp. 3d 972, 983 (D. Or. 2015). At this stage, the court presumes that Radian coordinated a massive campaign to dislike GY6's videos. If Radian's goal in disliking GY6's videos was to harm GY6 "as such" and avoid its contractual obligations, then it would have acted with an improper purpose. The specific amount of GY6's damages, if any, will be determined later. Radian's motion to dismiss GY6's third counterclaim is DENIED.

/ / /

/ / /

7 – OPINION AND ORDER

**3. Fourth Counterclaim-Computer Fraud and Abuse Act (18 U.S.C. § 1030)**

GY6's fourth counterclaim is an innovative cause of action under the CFAA. The CFAA is primarily a criminal statute that was enacted to give the federal government a means to prosecute hacking. *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012). However, the CFAA does provide for civil liability under certain narrow circumstances. 18 U.S.C. § 1030(g). One such instance is when an individual knowingly accesses a protected computer "without authorization" or "exceeding authorization" with intent to defraud. 18 U.S.C. § 1030(a)(4). GY6 alleges that Radian accessed GY6's YouTube account, which is hosted on protected computers, without or in excess of authorization in order to dislike videos GY6 posted for public viewing.[3]

Typically, when a plaintiff files a civil action under the CFAA, it alleges that it experienced economic damages when its own computers were accessed without or in excess of authorization. *See, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016); *Craigslist Inc. v. 3Taps Inc.*, 964 F. Supp. 2d 1178, 1180 (N.D. Cal. 2013); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1128 (9th Cir. 2009). GY6's claim differs in that it alleges it was harmed when Radian accessed a protected computer that was owned by a third party, i.e., YouTube, without or in excess of authorization.

Radian did not access a protected computer without authorization. To access a protected computer without authorization is to use a computer without any permission to do so, or after permission has been revoked. *Brekka*, 581 F.3d at 1135. But GY6 does not allege that Radian lacked or needed permission to access its publically available videos hosted on YouTube's computers. GY6 does not support, and indeed could not support, its conclusory allegation that,

---

[3] According to the CFAA, a protected computer is a computer, "which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States[.]" 18 U.S.C. § 1030(e)(2)(B).

8 – OPINION AND ORDER

"[Radian] knowingly accessed GY6vids' [sic] YouTube account without . . . authorization [.]" Accordingly, for its CFAA claim to survive a motion to dismiss, GY6 must properly allege that Radian accessed a protected computer in excess of authorization. This it fails to do.

The CFAA defines the term "exceeds authorization" to mean, "access[ing] a computer with authorization and [using] such access to obtain or alter information in the computer that the accesser is not entitled . . . to obtain or alter[.]" 18 U.S.C. § 1030(e)(6). The standard CFAA claim in this context is an employee who uses a company computer to steal valuable information. GY6's claim differs in that the only violation appears to be a violation of YouTube's terms of service.[4] A violation of the terms of use of a website does not constitute access in excess of authorization under the CFAA. *Nosal*, 676 F.3d at 863-64; *see also Facebook, Inc.*, 844 F.3d at 1067 ("[A] violation of the terms of use of a website—without more—cannot establish liability under the CFAA."). Thus, GY6's claim that Radian violated YouTube's terms of use and therefore exceeded authorization is not cognizable under the CFAA.

Because the alleged access concerns GY6's publically available YouTube channel, Radian did not access a protected computer without authorization. And even if Radian violated YouTube's terms of use, it did not access a protected computer in excess of authorization under the CFFA. Accordingly, Radian's motion to dismiss GY6's claim under the CFAA is GRANTED.

## CONCLUSION

Radian's motion to dismiss GY6's counterclaims for breach of contract (confidentiality) and intentional interference with economic relationships are DENIED. Radian's motion to

---

[4] As noted above, because YouTube and promoters such as GY6 actively seek viewers and their comments, GY6 cannot argue that Radian lacked permission to comment on the videos.

9 – OPINION AND ORDER

dismiss GY6's fourth counterclaim under the CFAA is GRANTED and that claim is dismissed with prejudice.

Well after the filing of Radian's reply, counsel for GY6 moved to withdraw. ECF No. 24. Good cause exists and that motion is GRANTED. The clerk shall mail a copy of this opinion to GY6's registered agent listed on certificate of service attached to the motion to withdraw. GY6 is granted 60 days to find substitute counsel. In the meantime, this matter is stayed.

IT IS SO ORDERED.

DATED this 24th day of October, 2018.

/s/ Michael J. McShane
Michael McShane
United States District Judge